# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF NORTH CAROLINA
# STATESVILLE DIVISION
# CIVIL ACTION NO. 5:18-CV-00006-GCM

| | |
|---|---|
| BARRY DAMON MALLATERE, | )<br>) |
| Plaintiffs, | )<br>) |
| v. | )    **ORDER**<br>) |
| TOWN OF BOONE, | )<br>) |
| Defendants. | )<br>) |

**THIS MATTER COMES** before this Court on Defendant Town of Boone's ("Defendant") Motion to Dismiss Plaintiff's Amended Complaint. (Doc. No. 13). Plaintiff Barry Mallatere ("Plaintiff") responded (Doc. No. 15) to which Defendant replied. (Doc. No. 16). As such, this matter is ripe for disposition.

## I.   FACTUAL BACKGROUND

Plaintiff at all times relevant to this case managed and operated several hotels in Boone, North Carolina. (Compl. ¶ 5). In 2011, Plaintiff served as President of Appalachian Hospitality Management, Inc. ("Appalachian Hospitality"). (*Id.* ¶ 6). In 2011, the pool heater at one of the hotels operated by Appalachian Hospitality malfunctioned. (*Id.* ¶ 8). Without knowledge of Plaintiff, employees removed a pool heater from another of the Appalachian Hospitality properties and replaced the malfunctioned heater. (*Id.* ¶ 9, 10). The employees responsible for the change did not get the necessary permits for the installation of the new pool heater. (*Id.* ¶ 11).

In 2012, Appalachian Hospitality decided to convert its heaters and furnaces from propane to natural gas. (*Id.* ¶ 12). Appalachian Hospitality contracted with a third party to do the conversion. (*Id.* ¶ 13). The third party inspected the employee installed pool heater and determined

the third party could safely convert the propane heater to natural gas. (*Id.* ¶ 15). The third party applied for and received the necessary permits to complete the conversion from the Defendant's Planning and Inspections Department. (*Id.* ¶ 16). After the conversion, Defendant's inspector confirmed the installation satisfied the local building code. (*Id.* ¶ 17).

In April of 2013, Daryl and Shirley Jenkins stayed in the hotel room directly above the converted pool heater. (*Id.* ¶ 18). The Jenkins passed away in the room that night. (*Id.* ¶ 19). Defendant's fire department inspected the room after the Jenkins' deaths and determined that nothing was wrong with the room itself. (*Id.* ¶ 21). Plaintiff instructed Appalachian Hospitality to not rent the room pending further tests. (*Id.* ¶ 23). An outside contractor tested the room and found no gas leaks present. (*Id.* ¶ 24).

In June of 2013, another couple stayed in the same room in which the Jenkins had died. (*Id.* ¶ 26). That couple did not report having any negative experiences. (*Id.*). The following week, Jeffrey and Jeanie Williams spent the night in the same room. (*Id.* ¶ 27). That night, exhaust from the pool heater entered the room and caused the Williams to suffer from carbon monoxide poisoning. (*Id.* ¶ 28). Jeffrey Williams died, and Jeanie Williams suffered serious injuries. (*Id.*).

Plaintiff did not have any knowledge that the room was susceptible to carbon monoxide poisoning prior to either the death of Jeffrey Williams or Daryl and Shirley Jenkins. (*Id.* ¶ 22, 24, 25, 30). However, Defendant launched an intensive investigation into the three deaths. (*Id.* ¶ 31, 32). The first investigation concluded that no crime had occurred. (*Id.* ¶ 33). Defendant, however, opened a second investigation into the incidents. (*Id.* ¶ 34). Plaintiff alleges in his Complaint that Defendant did not "have any probable cause of [a] crime being committed by Plaintiff." (*Id.* ¶ 35).

Defendant insisted the evidence from the second investigation be presented to the Grand Jury in hopes that an indictment would be issued against Plaintiff. (*Id.* ¶ 36). The Grand Jury

indicted Plaintiff on three counts of involuntary manslaughter and one count of assault inflicting serious bodily injury. (*Id.*). Plaintiff alleged that in support of the indictment, Defendant required two of Defendant's employees to appear and testify in front of the Grand Jury. (*Id.* ¶ 37). Plaintiff further alleged that these two witnesses provided false testimony that served as the basis for the indictment. (*Id.*). Ultimately, the District Attorney dropped all charges against Plaintiff. (*Id.* ¶ 39).

## II. STANDARD OF REVIEW

When faced with a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, the Court must "accept as true all well-pleaded allegations and . . . view the complaint in a light most favorable to the plaintiff." *Mylan Labs, Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993). The Court "assume[s] the[] veracity" of these factual allegations, and "determine[s] whether they plausibly give rise to an entitlement to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). However, the court "need not accept as true unwarranted inferences, unreasonable conclusions, or arguments." *E. Shore Mkts., Inc. v. J.D. Assocs. LLP*, 213 F.3d 175, 180 (4th Cir. 2000). Thus, to survive a motion to dismiss, the plaintiff must include within his complaint "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

## III. DISCUSSION

Plaintiff alleged three different causes of action against Defendant: (1) Violation of §1983; (2) Malicious Prosecution; and (3) Violation of Plaintiff's Fourth Amendment Rights pled in the alternative to the first two causes of action. Defendant moved to dismiss each of the claims. The Court will discuss each below.

### a. Violation of §1983

Congress passed Section 1983 to provide redress to private parties for the deprivation of their constitutional rights under the color of state law. 42 U.S.C. § 1983. In *Monell v. Dep't of Soc. Servs.*[1], the Supreme Court held that Section 1983 applies to municipalities. However, municipalities cannot be held liable under the theory of *respondeat superior* for Section 1983 claims. *Monell*, 436 U.S. at 694. "Where a plaintiff claims that the municipality has not directly inflicted an injury, but nonetheless has caused an employee to do so, rigorous standards of culpability and causation must be applied to ensure that the municipality is not held liable solely for the actions of its employee." *Board of Cty. Comm'rs v. Brown*, 520 U.S. 397, 405 (1997). Rather, for a municipality to be held liable under Section 1983, the plaintiff must show that the constitutional deprivation occurred as a result of the enforcement of a municipal policy or custom. *Id.*

Based on *Monell* and its progeny, the Court must first determine the alleged constitutional deprivation at issue. Plaintiff states quite clearly that the alleged deprivation was a seizure by the Defendant of the Plaintiff without probable cause in violation of Plaintiff's Fourth Amendment rights. (Compl. ¶ 45-46). Thus, the Court will discuss the Section 1983 claim only with respect to that alleged violation.

First, the Court notes that the Section 1983 claim cannot be based upon the testimony of the Defendant's employees to the Grand Jury. Allowing the testimony of the two employees to serve as the basis for liability for the municipality would give life to a *respondeat superior* theory that the Supreme Court has explicitly held not to apply to Section 1983. Plaintiff agrees that his claim is not based upon the allegedly false testimony of the two witnesses. (Doc. No. 15, p. 7)

---

[1] 436 U.S. 658 (1978).

("Plaintiff's claims are not based upon the improper or untruthful testimony of any grand jury witnesses, those allegations of their testimony are just smaller acts in the larger causes of action of Defendant improperly investigating and proceeding with charges against the Plaintiff when Defendant had no probable cause.")

Next, Plaintiff's Section 1983 claim cannot stand simply because the Defendant chose to reopen the investigation into Plaintiff. Plaintiff on several occasions in both the Complaint and brief noted that the original investigation determined that probable cause did not exist. Plaintiff went on to argue that the reopening of the investigation after an initial determination of no probable cause contributed to the violation of his Fourth Amendment rights. This argument has no merit. The Fourth Amendment does not require probable cause to investigate a potential crime. As a matter of fact, it is often the investigation of the crime that gives rise to the probable cause that justifies the prosecution. To the extent that Plaintiff claims the reopening of the investigation by Defendant caused a deprivation of his constitutional rights, the Court disagrees.

Rather than utilizing the above, a Section 1983 claim for municipality liability must be based upon an official policy or custom. *Monell*, 436 U.S. at 690-91. The Fourth Circuit identified four possible sources of official policy or custom that could give rise to municipal liability under Section 1983: (1) written ordinances and regulations; (2) affirmative decisions of individual policymaking officials; (3) omissions by policymaking officials that manifest deliberate indifference to the rights of the citizens; or (4) a practice so persistent and widespread and so permanent and well settled as to constitute a custom or usage with the force of law. *Carter v. Morris*, 164 F.3d 215, 218 (4th Cir. 1999) (quotations and citations omitted).

Here, Plaintiff does not allege a written policy, omissions by policymaking officials, or a general practice. Rather, Plaintiff alleges that municipality liability should attach based upon the

affirmative actions of individual policy makers. The Supreme Court has held that "not every decision by municipal officers automatically subjects the municipality to § 1983 liability." *Pembaur v. City of Cincinnati*, 475 U.S. 469, 481-83 (1986). Rather, the policy maker must have "final authority to establish municipal policy with respect to the action ordered." *Id.*

In Plaintiff's complaint, Plaintiff makes many references to "policy makers" without providing specific job titles, roles, or authority to make final municipal policy. In Paragraph 43 of the complaint, Plaintiff lists the "Town Council, Town Manager, Police Chief, Director of Planning and Inspections and Fire Chief" as the policy makers responsible for directing employees to seek criminal charges against Plaintiff. However, Plaintiff fails to properly plead the role of any of those alleged policy makers or their authority to set final municipal policy as it pertains to seeking criminal charges. Rather, Plaintiff in the next paragraph again refers generally to Defendant's "policy makers" by stating that it was their "decision to reopen the investigation, after it was closed by their lead detective upon his determination that no probable cause existed, and to seek indictments without probable cause [that] constitutes a policy of the Defendant." This formulaic recitation of "policy makers" and "policy" does not provide sufficient factual allegation to state a plausible claim upon which relief can be granted as require by *Iqbal*. *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

Plaintiff in his brief argued facts that are not found within the complaint. For instance, in his brief, Plaintiff states that it was the Police Chief who reopened the investigation into Plaintiff. (Doc. No. 15, p. 3). However, the complaint at the cited paragraph refers to a general policy maker. (Compl. ¶ 34). Additionally, Plaintiff states the Court can take judicial notice of the size of the Defendant's police department, and thus, make assumptions about the final decision-making authority of certain positions within that office. (Doc. No. 15, p. 3). However, each of

these requests asks the Court to consider facts that are not contained within the complaint. The Court will not accept that invitation. *See Pirelli v. Walgreen Co.*, 631 F.3d 436, 448 (7th Cir. 2011) ("The effort founders, however, because of the axiomatic rule that a plaintiff may not amend his complaint in his response brief.") (internal citations omitted). Thus, Defendant's Motion to Dismiss as it pertains to the Section 1983 claim is **GRANTED**.

   **b. Malicious Prosecution**

The second cause of action is one for malicious prosecution. To state a claim for malicious prosecution, a plaintiff must allege: "(1) defendant initiated the earlier proceeding; (2) malice on the part of defendant in doing so; (3) lack of probable cause for the initiation of the earlier proceeding; and (4) termination of the earlier proceeding in favor of the plaintiff." *Strickland v. Hedrick*, 194 N.C. App. 1, 17 (2008). Defendant moved to dismiss arguing that governmental immunity applied to this claim. The doctrine of governmental immunity holds that municipalities are immune from suit based upon the torts of its employees in the exercise of governmental functions absent waiver of immunity. *Herndon v. Barrett*, 101 N.C. App. 636, 640 (2004). The North Carolina Court of Appeals has held governmental immunity to apply to cases involving malicious prosecution. *See Strickland*, 194 N.C. App. at 16. "Governmental immunity is absolute unless the [municipality] has consented to [suit] or otherwise waived its right to immunity." *Fullwood v. Barnes*, 792 S.E.2d 545, 550 (N.C. Ct. App. 2016) (internal quotations omitted).

The Court agrees with Defendant that the doctrine of governmental immunity bars Plaintiff's claim. Here, Plaintiff alleged that Defendant authorized the investigation and prosecution of Plaintiff. These acts constitute governmental functions for which Defendant is immune from suit. *Strickland*, 194 N.C. App. at 16. Additionally, Plaintiff did not allege that

7

Defendant has waived its governmental immunity by purchasing liability insurance, for example. *See* N.C. Gen. Stat. §160A-485(a) ("Any city is authorized to waive its immunity from civil liability in tort by the act of purchasing liability insurance."). Thus, because Plaintiff's allegations only amount to governmental functions and because Defendant has not waived governmental immunity, Defendant's Motion to Dismiss the malicious prosecution claim must be **GRANTED**.

### c. Fourth Amendment Violation

Finally, Plaintiff pled in the alternative a direct violation of his Fourth Amendment rights. However, Section 1983 is the appropriate avenue to sue municipality actors for constitutional violations. While the Supreme Court in *Bivens v. Six Unknown Agents of the Federal Bureau of Narcotics*[2] held that the United States Constitution provides a direct cause of action against *federal* actors, to pursue a direct cause of action against municipality actors, the appropriate avenue remains Section 1983. Section 1983 is not a source of substantive rights; rather, it serves as an avenue for the vindication of constitutional deprivations against state actors. *Lambert v. Williams*, 223 F.3d 257, 260 (4th Cir. 2000) (citations omitted). Therefore, Plaintiff's claim is only cognizable via Section 1983, not as a direct claim.[3] As such, Defendant's Motion to Dismiss this claim is **GRANTED**.

## IV. CONCLUSION

For the aforementioned reasons, Defendant's Motion to Dismiss is **GRANTED**.

**SO ORDERED**.

---

[2] 403 U.S. 388 (1971).
[3] The Court has already dismissed Plaintiff's Section 1983 based on the discussion above.

Signed: June 3, 2019

Graham C. Mullen
United States District Judge